FILED
2012 May-01 AM 09:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **RICHARD SALAZAR, an individual** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.:** |
| | ) | |
| **WELLS FARGO BANK, NATIONAL ASSOCIATION, a/k/a WELLS FARGO BANK, N.A.; FEDERAL HOME LOAN MORTGAGE CORPORATION, a/k/a FREDDIE MAC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

**COMES NOW** the Plaintiff Richard Salazar (hereinafter "Plaintiff"), by and through his attorneys of record, and files his Complaint as follows:

1. This is a lawsuit brought under Alabama state law related to wrongful conduct by the Defendants which led to an improper foreclosure and loss of Plaintiff's property.

## PARTIES

2. The Plaintiff Richard Salazar is an Alabama resident who lives in Madison County, Alabama, which is in this judicial district.

3. The Defendant Wells Fargo Bank, National Association a/k/a Wells Fargo Bank, N.A. ("Wells Fargo") is a foreign mortgage company which allegedly

owned, serviced, or was otherwise involved in the mortgage loan of Plaintiff. The principal place of business of Wells Fargo is in North Carolina and Wells Fargo is incorporated outside of Alabama.

4. The Defendant Federal Home Loan Mortgage Corporation. a/k/a Freddie Mac ("Freddie Mac") is a foreign company which allegedly owned, serviced, or was otherwise involved in the mortgage loan of Plaintiff and who bought the Plaintiff's house at foreclosure. The principal place of business of Freddie Mac is in Virginia and Freddie Mac is incorporated outside of Alabama (believed to be Virginia).

## JURISDICTION

5. Personal jurisdiction exists over Defendants as they have the necessary minimum contacts with the State of Alabama and this suit arises out of its specific conduct with Plaintiff in Alabama.

6. Subject matter jurisdiction exists under 28 U.S.C. Section 1332.

7. The Plaintiff is a citizen of Alabama.

8. Defendants are not citizens of Alabama.

9. The amount in controversy is over $75,000.

## VENUE

10. Venue is proper in this judicial district under 28 U.S.C. Section 1391(a)(2) as "a substantial part of the events or omissions giving rise to the claim" asserted occurred in this judicial district.

## STATEMENT OF FACTS

11. Defendants acted as agents for each other in all the actions taken that relate in any way to Plaintiff.

12. Plaintiff fell behind on his mortgage loan to Wells Fargo, which allegedly had the right to collect the mortgage payments of Plaintiff.

13. Plaintiff was in discussions with Wells Fargo to modify the loan and avoid a foreclosure.

14. The modification was a difficult and frustrating process that appeared to be heading towards a successful conclusion with a letter from Wells Fargo on October 24, 2011.

### Wells Fargo Letter Dated October 24, 2011

15. By letter dated October 24, 2011, Defendants made a number of representations to Plaintiff.

16. The letter states "We appreciate the opportunity to be of assistance to you during this difficult financial period."

17. Defendants represented "We have agreed to accept a partial reinstatement in the amount of $2,335.13, to be submitted in the form of certified funds or a cashier's check, to be received on or before 11/01/2011."

18. The letter also states "We will not instruct our foreclosure counsel to suspend foreclosure proceedings until this signed agreement and funds for partial reinstatement have been received by the aforementioned date."

19. Plaintiff sent the signed agreement (the letter) and the funds as required.

20. The signed agreement and funds were received on November 1, 2011.

21. Despite the representations, in writing, in the October 24, 2011, letter, Defendants foreclosed on Plaintiff on October 27, 2011.

22. Defendant Freddie Mac was the high bidder on the property at the foreclosure sale on October 27, 2011.

23. Defendant Freddie Mac paid $103,900 at the October 27, 2011, foreclosure sale.

24. The property is worth and was worth significantly more than the purchase price.

**Letter Dated October 28, 2011 Demanding Possession Of The Home**

25. By letter dated October 28, 2011, Sirote & Permutt, sent a letter demanding possession of the property.

26. This letter referenced the foreclosure and demanded that the property be surrendered to Freddie Mac.

**Fax Dated November 3, 2011 To Wells Fargo**

27. On November 3, 2011, Plaintiff sent a fax to Defendant Wells Fargo asking that the foreclosure be rescinded.

28. This fax was sent to "Written Customer Correspondence".

29. The fax pointed out that Plaintiff's cashier check (500167620) was applied to his account in the amount of $2,335.13.

30. The fax noted that the signed agreement was received by Wells Fargo by November 1, 2011.

**Fax Dated November 3, 2011 To Derwin Spears At Wells Fargo**

31. On November 3, 2011, Plaintiff sent a fax to a "Derwin Spears" sending the previous fax and proof that the check was received by Wells Fargo at 8:34 am on November 1, 2011.

32. The check was signed for by a "R. Gorton."

**Fax Dated November 17, 2011 To Derwin Spears At Wells Fargo**

33. On November 17, 2011, Plaintiff sent a fax to Derwin Spears of Wells Fargo.

34. The fax states "I want to confirm our conversation from last night and that my account has been rescinded from the foreclose[ure] department and we

will proceed with the agreement as previously signed (please review attached contract)."

35. The fax closes with "I want to thank you for working with me and helping resolve this situation."

36. The fax was also sent to a Shelly McLaurin.

**<u>Fax Dated November 27, 2011 To Cheryl at Wells Fargo</u>**

37. Plaintiff sent a fax dated November 27, 2011, to a "Cheryl" at Wells Fargo.

38. The fax outlines the individuals at Wells Fargo who told Plaintiff the rescission of the foreclosure was approved.

**<u>Fax Dated December 14, 2011 To Cheryl Merriman At Wells Fargo</u>**

39. On December 14, 2011, Plaintiff sent a fax to Wells Fargo employee "Cheryl Merriman".

40. Plaintiff references that he has a tenant who has paid his deposit and is ready to move into the house.

41. Plaintiff requests that the foreclosure sale be rescinded.

**<u>Fax Dated December 20, 2011 To Cheryl Merriman At Wells Fargo</u>**

42. Plaintiff sent a fax dated December 20, 2011, to Cheryl Merriman at Wells Fargo.

43. Cheryl Merriman at Wells Fargo had told Plaintiff that he supposedly was willing to take "cash for keys."

44. "Cash for keys" is a term in the foreclosure industry for someone accepting a token monetary amount (typically $500 to $2,000) in exchange for a release of all claims and providing keys to the Mortgage Company.

45. Plaintiff noted in the December 20, 2011, fax that he had never had any conversation with Freddie Mac.

46. Plaintiff noted he was continuing to make the payments of $2,335.13.

47. Plaintiff repeated his request for a rescission.

**Fax Dated December 21, 2011 To Cheryl Merriman At Wells Fargo**

48. On December 21, 2011, Plaintiff sent a fax to Cheryl Merriman referencing additional documents that Plaintiff was just told that he needed.

49. Plaintiff described his efforts in obtaining the documents four days before Christmas.

50. Plaintiff again requested a rescission and asked for a letter informing him of the rescission.

**Fax Dated February 24, 2012 to Cheryl Merriman At Wells Fargo**

51. Plaintiff sent this fax enclosing various documents that the Defendants had requested.

52. Plaintiff also stated “Again, there has been a wrongful foreclosure and I have been trying to have this rescinded. I have worked with four (4) loan

specialist[s] (Derwin Spears, Shelly McLaurin, Cheryl Merriman and now Adam Campbell)."

53. Plaintiff detailed his frustrations with the process including the conflicting information about the rescission being approved.

54. Plaintiff mentioned that he has paid over $9000 in mortgage payments since the foreclosure and that Wells Fargo has accepted this money.

55. Plaintiff ends the fax with "I need resolution on this delicate matter immediately! The house is mine and I need to know what Wells Fargo intends to do? Your cooperation is greatly appreciated."

**Fax Dated February 28, 2012 to Amy Jernigan At Wells Fargo**

56. This letter, dated February 28, 2012, to Amy Jernigan at Wells Fargo documents several important facts.

57. First, Amy Jernigan confirmed the "rescission process" was approved in December 2011.

58. Second, the Defendants took the position that Plaintiff signed a "cash for keys" agreement.

59. Plaintiff said in the fax "I told you absolutely not. I want to see a copy of this 'so-called' contract I signed. The only document I signed was the loan modification re-payment plan with Derwin Spears. I reminded you that I

had this same conversation with Cheryl Merriman back on December the 20th."

60. Plaintiff explained the loss of a tenant who received an eviction notice in November, the lost time at work, and the harassment, embarrassment and stress he and his family went through.

**<u>Fax Dated March 1, 2012 to Amy Jernigan At Wells Fargo</u>**

61. Plaintiff sent a fax to Amy Jernigan at Wells Fargo on March 1, 2012.

62. On February 29, 2012, Amy Jernigan told Plaintiff his situation had been escalated to expedite the process.

63. Once again the issue of a signed agreement on "cash for keys" came up and was the excuse for the delay in rescinding the foreclosure.

64. Amy Jernigan admitted the cash for keys agreement may have been signed for by the tenant who was told to leave.

65. Plaintiff again asked that Wells Fargo take the appropriate action.

**<u>Fax Dated March 7, 2012 to Lawrencia Ogunse At Wells Fargo</u>**

66. Plaintiff sent a fax dated March 7, 2012, to a "Mrs. Ogunse" and copied to Amy Jernigan.

67. Mrs. Ogunse was Plaintiff's fifth point of contact.

68. She informed Plaintiff the rescission process was still under review.

69. Plaintiff ended his fax with "We need resolution now!"

**Letter From Lawrencia Ogunse At Wells Fargo To Plaintiff Dated March 12, 2012**

70. Lawrencia Ogunse, an Executive Mortgage Specialist for Wells Fargo in the Office of Executive Complaints, wrote a letter to Plaintiff dated March 12, 2012.

71. The letter stated “Due to the complex nature of the above-referenced complaint, WFHM requires additional time to complete the necessary research.”

72. The letter thanked Plaintiff: “WFHM appreciates your patience in this matter.”

**Fax Dated March 16, 2012 to Wells Fargo Regarding “Hardship Letter”**

73. Plaintiff sent a letter to Wells Fargo on March 16, 2012.

74. Plaintiff detailed some of the facts which had occurred before and after the foreclosure.

75. The letter ends as follows: “The fact is, there was a wrongful foreclosure on Wells Fargo part. Their failure to communicate to the attorneys and keep everyone informed has cost me dearly. I have kept up my agreement. I have paid $2335.13 for 5 months and even have had to provide insurance. Wells Fargo messed up and should compensate me for my home, my time and stress. They evicted my tenants of one year, caused me embarrassment by

the foreclosure and now, stress upon stress and lost of time and money. Some how, some way, I deserve to be compensated."

76. Other communications occurred between the parties by phone and otherwise in Plaintiff's attempts to get the foreclosure sale rescinded.

77. Defendants kept Plaintiff from having access to his house.

78. Plaintiff was not able to rent out his house due to the control exercised over it by Defendants.

79. Plaintiff has continued to pay in excess of $2,000.00 per month to Defendant Wells Fargo who has accepted the money each month.

80. Plaintiff is no long able to send the money due to the actions of Defendants.

81. Plaintiff's credit reports accessed on April 10, 2012, show the Wells Fargo account with a balance of $97,648, a past due amount of $12,109, and that foreclosure proceedings have been started or initiated.

82. If the home was truly sold at a foreclosure sale for the amount represented in the foreclosure deed, then the credit reports would reflect a zero balance as Plaintiff does not owe Wells Fargo or Freddie Mac any money.

83. Defendants have been sued numerous times in Alabama and across the nation for this exact type of fraud.

84. Defendants continue to lie to consumers about cancelling, stopping, and/or postponing foreclosure sales.

85. Had Plaintiff been told the truth about the foreclosure still being scheduled, Plaintiff could have taken other steps to prevent the foreclosure.

86. For example, Plaintiff could have filed for bankruptcy which would have stopped the foreclosure.

87. Another example is Plaintiff could have obtained money to reinstate the loan and stop the foreclosure.

88. In reliance upon what Defendants had told Plaintiff, however, Plaintiff did not take any steps to stop the foreclosure as Plaintiff had been assured the foreclosure would not occur if the October 24, 2011, agreement was sent in by November 1, 2011.

**<u>Damages Plaintiff Has and Will Suffer Due to Defendants' Misconduct</u>**

89. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has and will suffer massive damages and injuries.

90. These damages include great mental anguish, damage to reputation, economic damages, and Plaintiff claims from Defendants all damages allowable under the law.

**<u>Defendants' Other Wrongful Conduct Connected With Plaintiff</u>**

91. The foreclosure was illegal and constituted a threat to take action which Defendants was not legally entitled to take.

92. Defendants improperly applied, charged, or otherwise handled expenses, charges, fees, payments, and the loss mitigation process (including loan modification) with Plaintiff.

93. Defendants did not conduct all required pre-foreclosure counseling and loss mitigation efforts as required under the law and the documents controlling the conduct of Defendants, including servicing requirements and regulations.

94. Transfers were allegedly made ultimately resulting in Defendants allegedly having the loan and/or the mortgage.

95. Plaintiff alleges that all such transfers were improper, void, and without legal effect.

96. The note and mortgage were improperly split from each other, which results in the mortgage being void.

97. The foreclosure sale was without proper notice to Plaintiff and in direct derogation of Alabama common and statutory law.

98. Defendants lacked standing to foreclose in that it had no present legal right to enforce the security agreement in the foreclosure action.

99. The foreclosure was illegal and void and improper due to the fraud of Defendants in promising Plaintiffs that the foreclosure sale had been stopped.

100. All Defendants employees and agents acted within the line and scope of their employment and/or agency relationship.

**COUNT ONE**

**NEGLIGENCE**

101. Plaintiff realleges all paragraphs as if set out here in full.

102. Defendants negligently conducted a foreclosure sale on Plaintiff's property.

103. Defendants negligently handled, applied, imposed, created, serviced, and processed payments, charges, fees, expenses, loss mitigation efforts (including loan modifications) and other aspects of Plaintiff's loan and mortgage.

104. As a direct result of the said negligence, Plaintiff was injured and damaged as alleged above and have suffered mental anguish, economic injury and all other damages allowed by law.

105. As a result thereof, Defendants are liable for all natural, proximate and consequential damages due to their negligence.

**COUNT TWO**

**WANTONNESS**

106. Plaintiff realleges all paragraphs as if set out here in full.

107. Defendants acted with reckless indifference to the consequences, and consciously and intentionally conducted a wrongful foreclosure sale on Plaintiff's property.

108. Defendants wantonly handled, applied, imposed, created, serviced, and processed payments, charges, fees, expenses, loss mitigation efforts (including loan modifications) and other aspects of Plaintiff's loan and mortgage.

109. These actions were taken with reckless indifference to the consequences, consciously and intentionally in an effort to increase profits for Defendants.

110. Defendants knew that these actions were likely to result in injury to Plaintiffs including financial and emotional injuries and mental anguish.

111. As a result thereof, Defendants are liable for all natural, proximate and consequential damages due to its wantonness as well as punitive damages.

## COUNT THREE

## UNJUST ENRICHMENT

112. Plaintiff adopts and realleges all paragraphs as if set out here in full.

113. The actions of Defendants in foreclosing on the home of Plaintiff in violation of law resulted in Defendants being unjustly enriched by the payment of fees, insurance proceeds and equity in the home.

114. Defendants have kept thousands and thousands of dollars from Plaintiff after the foreclosure.

115. As a result of Defendants' unjust enrichment, Plaintiff has been injured and damaged in that Plaintiff has been forced to pay charges that were illegal, wrong in character, wrong in amount, unauthorized, or otherwise improper under threat of and the actual illegal foreclosure by Defendants.

116. Plaintiff claims all damages allowable under law as a result of Defendants' wrongful conduct and unjust enrichment.

## COUNT FOUR

## WRONGFUL FORECLOSURE

117. Plaintiff realleges all prior paragraphs as if set out here in full.

118. Defendants wrongfully initiated a foreclosure proceeding against Plaintiff in violation of the law, in an deliberate effort to take Plaintiff's home illegally and to obtain it at a price that shocks the conscience.

119. The wrongful foreclosure proceeding by Defendants was negligent, wanton or intentional, depending on proof adduced at trial.

120. As a result thereof, Defendants are liable for all natural, proximate and consequential damages due to their actions including an award of punitive damages.

## COUNT FIVE

## SLANDER OF TITLE

121. Plaintiff realleges all paragraphs as if set out here in full.

122. Defendants, in filing or playing a role in the filing of a foreclosure deed (which is void) have caused a cloud to be placed on the title of the property of Plaintiff.

123. As the proximate cause of Defendants' slandering of Plaintiff's title, Plaintiff was caused to suffer injuries and damages and claim all damages allowable under law.

## COUNT SIX

## BREACH OF CONTRACT

124. Plaintiff realleges all paragraphs as if set out here in full.

125. Defendants breached the contract with Plaintiff and thereby caused Plaintiff incidental and consequential damages (including mental anguish).

126. This includes the improper accounting, charges, payment processing, loss mitigation efforts and the foreclosure process itself.

127. Plaintiff claims all damages allowable under law.

## COUNT SEVEN

## FRAUD

128. Plaintiff realleges all paragraphs as if set out here in full.

129. Defendants represented to Plaintiff in writing that there would be no foreclosure if Plaintiff sent in the agreement and money by November 1, 2011.

130. Plaintiff relied upon the truthfulness of Defendants in this representation.

131. As a result, Plaintiff devoted all of his efforts to the modification process instead of seeking other options, including bankruptcy, drawing funds from retirement accounts or other sources to reinstate the loan, etc. to stop the foreclosure sale.

132. This was the intent of Defendants, to trick by misrepresentation and suppression, the Plaintiff into proceeding with the loan modification process until after the foreclosure sale occurred when the Plaintiff would be deprived of the use of his house.

133. At the time of this representation, Defendants had no intention of honoring this promise.

134. Defendants suppressed the truth from Plaintiff as Defendants knew that Plaintiff would have taken other action if the Plaintiff had known the truth.

135. Defendants continued to misrepresent and suppress the truth concerning material facts in that it had no intention of rescinding the foreclosure sale.

136. The misrepresentations and suppressions concerned material facts relating to the Plaintiff keeping his home.

137. The Plaintiff properly relied upon the false statements and suppressions as no one else in the world would know the mind and intent of Defendants except for Defendants themselves.

138. The shock, dismay, fear, anger, embarrassment, humiliation, sense of betrayal, and outrage felt and experienced in the Plaintiff's body, mind, and heart, is difficult to describe.

139. All of the actions of Defendants were taken in light of a deliberate plan, intent, and scheme to steal the Plaintiff's home.

140. All of the misrepresentations and suppressions of material fact which occurred before and after the foreclosure were made intentionally, maliciously, recklessly, negligently, and/or innocently.

141. The Plaintiff properly relied upon all such misrepresentations and suppressions of material facts and has been damaged thereby.

142. At all times Defendants had an obligation to speak truthfully and to not lie to Plaintiff and to not tell half truths to Plaintiff.

143. Defendants knew at all times the devastating effect that the fraud would have upon the Plaintiff and this is consistent with the effect that homeowners across Alabama and across this nation are experiencing from the rampant fraud committed by Defendants over the last several years.

144. Defendants have refused to apologize to the Plaintiff for its conduct.

145. Defendants have refused to set aside the wrongful foreclosure which was accomplished by Defendants' fraudulent misconduct.

146. Defendants have refused to express, in words or deeds, any remorse or any feelings of guilt or regret for what they have done to the Plaintiff and what they are continuing to inflict upon the Plaintiff every day.

147. Had Plaintiff been told the truth before October 27, 2011, Plaintiff could have taken other steps and actions to prevent the foreclosure and to save his home.

148. Plaintiff claims all damages allowable under law.

## COUNT EIGHT

## NEGLIGENT AND/OR WANTON HIRING, SUPERVISION, AND/OR TRAINING

149. Plaintiff realleges all paragraphs as if set out here in full.

150. Defendants hired, supervised, and/or trained incompetent agents or employees who committed some or all of the wrongful acts set forth in this Complaint.

151. Defendants knew or should have known of the incompetence of these agents or employees.

152. Defendants were negligent or reckless in their hiring, supervision, and/or training which led as a direct and proximate result to the damages suffered by Plaintiff.

153. Plaintiff claims all damages allowable under law.

**COUNT NINE**

**INTENTIONAL AND/OR MALICIOUS CONDUCT**

154. Plaintiff realleges all paragraphs as if set out here in full.

155. All actions of Defendants were made intentionally and/or malicious and led to the damages of Plaintiff as a direct proximate result.

156. Plaintiff claims all damages allowable under law.

**COUNT TEN**

**INVASION OF PRIVACY BY INTRUSION UPON SECLUSION**

157. Plaintiff realleges all paragraphs as if set out here in full.

158. Alabama law recognizes Plaintiff's right to be free from invasions of privacy and Defendants violated Alabama state law as described in this Complaint.

159. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

160. Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of

consumer financial data for a broad range of "financial institutions" including debt collectors (albeit without a private right of action), when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

161. Defendants and/or their agents intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of the Plaintiff, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiff's privacy.

162. Defendants and their agents intentionally, recklessly, and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiff's right to privacy.

163. Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

164. The conduct of Defendants and their agents, in engaging in the above-described illegal collection conduct against Plaintiff, resulted in multiple

intrusions and invasions of privacy by Defendants which occurred in a way that would be highly offensive to a reasonable person in that position.

165. As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from Defendants.

166. All acts of Defendants and their agents and/or employees were committed with malice, intent, wantonness, and/or recklessness and as such Defendants are subject to punitive damages.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff having set forth his claims for relief against Defendants, respectfully pray of the Court as follows:

a. That Plaintiff recovers against Defendants a sum to be determined by a jury of his peers in the form of actual, nominal, and punitive damages;

b. That Plaintiffs recover reasonable attorney's fees, costs, expenses;

c. That the foreclosure sale be set aside; and

d. That Plaintiff has such other and further and proper relief as the Court may deem just and proper.

Respectfully Submitted,

/s/ John G. Watts

**John G. Watts (ASB-5819- T82J)**
**M. Stan Herring (ASB-1074-N72M)**
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattsherring.com
stan@wattsherring.com

**Attorneys for Plaintiff**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

**Serve defendants via certified mail at the following addresses**:

Wells Fargo Bank, National Association
c/o CSC Lawyers Incorporating Srv, Inc.
150 S. Perry Street
Montgomery, Alabama 36104

Federal Home Loan Mortgage Corporation
a/k/a Freddie Mac
c/o Corporate Secretary
8200 Jones Branch Drive MS 200
McLean, Virginia 22102